| | | |
|---|---|---|
| DANIEL GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 03 C 2237** |
| | ) | **Magistrate Judge Geraldine Soat Brown** |
| PAUL D. LAWENT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is a motion for summary judgment filed by plaintiff Daniel Gonzalez ("Gonzalez"). [Dkt 51.] For the reasons set out herein, Gonzalez's motion for summary judgment is denied.

### Factual Background[1]

This is a lawsuit against an attorney, Paul Lawent ("Lawent"), who filed two complaints against the plaintiff, Gonzalez, to collect a debt allegedly owed. The issues on the present motion for summary judgment are whether Lawent violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and, if so, whether he may be shielded from liability by the bona fide error affirmative defense.

---

[1] The following facts are taken from Lawent's responses to Gonzalez's statement of facts filed pursuant to Local Rule 56.1, cited herein as: "Def.'s LR Resp. ¶ __" [dkt 53], and from the exhibits submitted with the parties' filings, cited herein as: "Pl.'s LR App., Ex. __" [dkt 51], and "Def.'s Resp. Mot. Summ. J., Ex. __" [dkt 53].

In 1999, Gonzalez purchased a Buick LeSabre and a Chevrolet Lumina from Brim Motor Mart, Inc. ("Brim"). (Def.'s LR Resp. ¶¶ 3, 14; Pl.'s LR App., Ex. D, Affidavit of Daniel Gonzalez ¶ 9.) With respect to the Buick, Gonzalez signed a retail installment contract requiring 24 monthly payments of $219.80 beginning in July 1999 and ending in July 2001. (Def.'s LR Resp. ¶ 3; Pl.'s LR App., Ex. E, Retail Installment Contract.) About a year after purchasing the Buick, Gonzalez, who had fallen behind in his payments on that car, met with Martin Cohen ("Cohen"), a principal of Brim, to request a payoff figure that would satisfy the amount owed on the Buick. (Def.'s LR Resp. ¶¶ 4, 5; Gonzalez Aff. ¶ 2.)[2] Gonzalez contends that Cohen gave him both a payoff letter and the title for the Buick with the assurance that the amount stated in the payoff letter would completely satisfy the outstanding debt on that car, including interest. (Pl.'s LR Stmt. ¶¶ 6, 7; Gonzalez Aff. ¶¶ 3, 5.)[3] Cohen admits that he told Gonzalez that he would give him the title to the Buick, but maintains that he advised Gonzalez that money was still owed on the vehicle and that Gonzalez orally agreed to pay the remaining balance. (Def.'s LR Resp. ¶¶ 6, 7; Def.'s Resp. Mot. Summ. J., Ex. 2, Affidavit of Martin Cohen ¶ 7; Pl.'s LR App., Ex. G, Cohen Dep. at 21.)

On June 25, 2000, Gonzalez traded in the Buick to Jack Phelan Chevrolet ("Phelan") and presented the payoff letter to a Phelan representative. (Pl.'s LR Stmt. ¶ 8; Gonzalez Aff. ¶ 6.)[4]

---

[2] Lawent attempts to dispute that Gonzalez met with Cohen to request a payoff letter for the Buick, stating that he is "not aware this happened." (Def.'s LR Resp. ¶ 5.) Lawent cites no evidence in support of his denial, however. As such, that fact is deemed admitted. L.R. 56.1(b)(3)(A), (B).

[3] In his Affidavit, Gonzalez states that Cohen did not tell him the amount listed on the payoff letter. (Gonzalez Aff. ¶ 4.) The payoff letter was given to him in an envelope. (Id. ¶ 3.)

[4] Lawent asserts that he "has no direct knowledge of this transaction." (Def.'s LR Resp. ¶ 8.) Again, though, Lawent provides no contrary evidence to show that this event did not happen. Thus, that fact is also deemed admitted. L.R. 56.1(b)(3)(B).

Phelan sent a check in the amount of $2,637.60 to Cohen. (Def.'s LR Resp. ¶ 9.) The check stub contained the notation, "PAY OFF ACC OF DANIEL GONZALEZ ON 92 BUICK LESABRE." (*Id.*; Pl.'s LR App., Ex. C, Check & Stub.) Cohen applied the amount of the check to the outstanding balance, and never contacted Phelan to question or dispute the amount of the check. (Pl.'s LR Stmt. ¶¶ 9, 11; Def.'s LR Resp. ¶ 11; Cohen Dep. at 20, 23-24.)

In May 2002, Cohen forwarded an auto credit statement reflecting a balance of $2,726.20 to J.V.D.B. & Associates, Inc. ("J.V.D.B."), a licensed collection agency. (Cohen Aff. ¶ 9; Def.'s Resp. Mot. Summ. J., Ex. 1, Affidavit of Paul D. Lawent, Ex. 2, Auto Credit Statement.) According to Lawent, J.V.D.B. sent Gonzalez a debt validation letter requesting that he communicate in writing as to whether he contested the debt of $2,726.20, but Gonzalez never responded. (Lawent Aff. ¶¶ 7, 8.)[5] Cohen subsequently authorized J.V.D.B. to retain Lawent, an attorney, to pursue the matter in court. (Cohen Aff. ¶ 12; Def.'s Resp. Mot. Summ. J., Ex. 3, Affidavit of John Vanko ¶¶ 6, 7.)[6] Lawent filed a lawsuit on behalf of Brim against Gonzalez in the Circuit Court of Cook County in September 2002. (Def.'s LR Resp. ¶ 20; Pl.'s LR App., Ex. A, First Compl.) In the lawsuit, Lawent claimed that $2,726.20 was still owed on the Buick plus $350.00 in attorney's fees. (Def.'s LR Resp. ¶ 20; First Compl.) The complaint was drafted by law clerks from J.V.D.B.'s office who are

---

[5] Gonzalez argues that the court should disregard that statement (which was contained in Lawent's Affidavit) because Lawent provided no evidence that such a letter was sent, and is not competent to testify as to the existence of the letter. (Pl.'s Reply at 4.) [Dkt 54.] However, Lawent stated in his Affidavit that he reviewed the records of J.V.D.B. in the *Brim v. Gonzalez* matter, and that from his review discovered that J.V.D.B. had sent a debt validation letter to Gonzalez which Gonzalez had not contested, "according to [J.V.D.B.'s] records." (Lawent Aff. ¶¶ 6-8.) *See also* Pl.'s LR App., Ex. J., Vanko Dep. at 27-28. Thus, the court will not disregard that statement.

[6] John Vanko ("Vanko") was the president and majority owner of J.V.D.B.. (Vanko Aff. ¶ 2.)

employed, paid, and supervised by J.V.D.B., although Lawent reviewed the draft before signing it. (Def.'s LR Resp. ¶¶ 34, 35; Lawent Aff. ¶¶ 10, 23, 24; Vanko Dep. at 23-24.)[7] In addition, prior to filing the suit Lawent reviewed the retail installment contract for the Buick as well as the auto credit statement from Brim stating that $2,726.20 was owed. (Def.'s LR Resp. ¶ 22; Lawent Aff. ¶ 24; Auto Credit Statement; Pl.'s LR App., Ex. H, Lawent Dep. at 7-9; Vanko Dep. at 23.) Lawent verified the complaint on information and belief, not personal knowledge. (First Compl.; Lawent Aff. ¶ 12.)

Subsequently, Gonzalez and Lawent appeared for trial on the complaint in the Circuit Court. (Def.'s LR Resp. ¶ 24; Lawent Dep. at 18-20.) Gonzalez states, and Lawent denies, that Gonzalez showed Lawent a copy of the check from Phelan and the title to the Buick when they appeared together in court. (Pl.'s LR Stmt. ¶ 24; Def.'s LR Resp. ¶ 24; Gonzalez Aff. ¶ 18; Lawent Aff. ¶¶ 18-20.) The case ended up being dismissed without prejudice because Cohen did not appear. (Def.'s LR Resp. ¶ 25; Gonzalez Aff. ¶ 19; Lawent Dep. at 19.)[8]

On February 3, 2003, Lawent filed a second lawsuit on behalf of Brim against Gonzalez. (Def.'s LR Resp. ¶ 26; Pl.'s LR App., Ex. B, Second Compl.) That lawsuit contained the same allegations as the first lawsuit. (*Id.*) Lawent again verified the complaint on information and belief. (Second Compl.) Shortly after filing that complaint, on February 26, 2003, Lawent received a facsimile from Gonzalez's attorney which included a copy of the check for the Buick sent by Phelan

---

[7] By "drafting," Lawent means that the law clerks filled in blanks on form documents. (Def.'s LR Resp. ¶ 34; Lawent Aff. ¶ 23.)

[8] Gonzalez states that the complaint was dismissed for want of prosecution (Pl.'s LR Stmt. ¶ 25), but Lawent states that the complaint was non-suited on his motion (Def.'s LR Resp. ¶ 25; Lawent Dep. at 19). That dispute is not material to the case.

to Cohen. (Def.'s LR Resp. ¶ 28; Pl.'s LR App., Ex. I, Fax from Edelman to Lawent.) Upon receiving the facsimile, Lawent immediately confirmed the information with J.V.D.B. and, on its instruction, moved to dismiss the case against Gonzalez with prejudice. (Def.'s LR Resp. ¶ 28; Lawent Aff. ¶¶ 21, 22.) The case was dismissed with prejudice on March 18, 2003. (Def.'s LR Resp. ¶ 28; Lawent Aff. ¶ 22.)

At his deposition, Cohen claimed that the $2,726.20 figure represented the remaining balances on both the Buick *and* the Chevrolet that Gonzalez had purchased from Brim. (Def.'s LR Resp. ¶ 12; Cohen Dep. at 25.) However, when asked to show how he arrived at that figure, Cohen conceded that a mathematical error might have occurred, because even if Gonzalez did owe money on both the Buick and the Chevrolet, that amount would have been less than $2,726.20. (Def.'s LR Resp. ¶ 13; Cohen Dep. at 27-28.) Moreover, neither the first complaint nor the second complaint filed by Lawent ever mentioned the Chevrolet. (Def.'s LR Resp. ¶¶ 21, 27; First Compl.; Second Compl.)[9]

Lawent, too, conceded that the information provided by Cohen to J.V.D.B. did not add up to $2,726.20; however, he stated that there was no intent to collect more than the amount owed by Gonzalez. (Def.'s LR Resp. ¶ 13; Lawent Aff. ¶ 13.) Lawent explained that he has an oral agreement with J.V.D.B., which provides that J.V.D.B. will provide complete, accurate information on cases and refer only "current and collectible" debts. (Lawent Aff ¶¶ 4, 5, 10, 16; Def.'s LR Resp.

---

[9] In fact, Lawent attached a copy of the retail installment contract for the Buick, but did not attach a retail installment contract for the Chevrolet. (Def.'s LR Resp. ¶ 26; First Compl.; Second Compl.) It appears that Cohen never provided J.V.D.B. with a copy of the retail installment contract for the Chevrolet (and thus J.V.D.B. never provided Lawent with such copy) because, according to Cohen, the file for the Chevrolet had been misplaced. (Def.'s LR Resp. ¶ 19; Cohen Dep. at 15, 19-20; Lawent Dep. at 11.)

(¶¶ 29, 32.) Vanko, the president of J.V.D.B., confirmed Lawent's testimony. (Vanko Aff. ¶¶ 4, 8.) According to Lawent, "current and collectible" debts are those that have not already been paid, are not involved in bankruptcy, are not being handled by another attorney, are not precluded from recovery by the statute of limitations, and a "number of other reasons." (Def.'s LR Resp. ¶ 33; Lawent Aff. ¶ 5.)[10] Lawent states that he relied on J.V.D.B.'s representation that the debt at issue was current and collectible, as he had in "thousands of other cases," and did not know that the amount sought by J.V.D.B. was inaccurate. (Lawent Aff. ¶¶ 10, 13, 16.) Lawent further states that he has never had any problem with any of the other debt collection matters involving Brim that were referred to him. (Lawent Aff. ¶ 11.)

According to Cohen, Brim has relied on the services of J.V.D.B. for many years, and has always referred debts for collection that are current and collectible. (Cohen Aff. ¶¶ 10, 11; Vanko Aff. ¶¶ 3, 4.) Like the contract between Lawent and J.V.D.B., the contract between Brim and J.V.D.B. is oral, with the exception of the fee arrangement which is provided on a computer generated card. (Def.'s LR Resp. ¶ 31; Vanko Dep. at 30-33.) Vanko states that J.V.D.B.'s arrangement with Brim is that only current and collectible debts will be referred, and he "take[s] . . . the client's word" as to balances that are owed. (Def.'s LR Resp. ¶ 30; Vanko Aff. ¶ 4; Vanko Dep. at 28.)

---

[10] In his response to Gonzalez's motion for summary judgment, Lawent added that "current and collectible" also means that the debt had been investigated by J.V.D.B. (Def.'s Resp. at 4.) Lawent did not include that in his Affidavit, however. Thus, that unsupported point will not be considered.

## Procedural Background

Gonzalez's original complaint in this suit alleged that Lawent violated the FDCPA by verifying the complaint in the action filed by him on behalf of Brim against Gonzalez. (Compl. ¶¶ 15-17.) [Dkt 1.] This court granted summary judgment in favor of Lawent on that claim because Lawent verified the complaints "on information and belief" without personal knowledge, and Illinois law permits verification of a complaint on information and belief. 735 Ill. Comp. Stat. § 5/2-605. *See Gonzalez v. Lawent*, No. 03 C 2237, 2004 WL 2036409 at *3 (N.D. Ill. Sept. 10, 2004) (Brown, M.J.). In the same decision granting summary judgment to Lawent on the initial complaint, the court allowed Gonzalez to file an amended complaint. *Gonzalez*, 2004 WL 2036409 at *1, 7.

Gonzalez's amended complaint asserts the following claimed violations of the FDCPA: (1) that verification of a complaint by counsel on information and belief violates 15 U.S.C. § 1692f when counsel has no personal knowledge of the truth or falsity of the allegations, conducts no investigation into the validity of the debt, and has been previously presented evidence that the debt has been paid in full; (2) that Lawent violated 15 U.S.C. § 1692e(2)(A) by misrepresenting the amount and nature of the debt; and (3) that Lawent violated 15 U.S.C. § 1692e by filing two lawsuits attempting to collect on the alleged debt when the amount of the debt listed on the complaints was not the amount owed on the contract attached to the complaint. (Am. Compl. ¶¶ 47-49.) [Dkt 45.] Gonzalez now moves for summary judgment on his amended complaint.

## Discussion

Lawent argues that Gonzalez is not entitled to summary judgment because "[a] trier of fact could easily conclude that Lawent's procedures met the standard of bona fide error pursuant to

1692k(c) and that Defendant cannot be held liable because of such error." (Def.'s Resp. at 6.) The court will address whether Lawent violated the FDCPA before addressing Lawent's bona fide error defense, since without a violation there is no need to address the bona fide error issue.

## I.    Whether Lawent violated the FDCPA.

Under the FDCPA, a debt collector is subject to civil liability if he "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or if he "use[s] unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. "[T]he [FDCPA] is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1131 (W.D. Wisc. 2004) (citations omitted).

Gonzalez argues that Lawent violated § 1692e(2)(A) by "initiating a lawsuit that misrepresented the character, amount or legal status of the debt." (Pl.'s Mem. at 8.)[11] Gonzalez argues that even if he had owed the amount claimed in the complaints on both cars, $2,726.20 (which he asserts he did not), Lawent's filing suit for an alleged default on one retail installment contract, the Buick, without disclosing that there were actually two separate debts being claimed (the other being the Chevrolet) is a violation of § 1692e(2)(A). (Pl.'s Mem. at 8-9; Pl.'s Reply at 2.)

---

[11] Although Gonzalez alleged two separate violations of § 1692e in his amended complaint (in paragraphs 47 and 49), the court will address them together here, as they both invoke § 1692e and as Gonzalez does not appear to make a separate argument regarding his claim in paragraph 47.

Lawent does not really deny that his actions violated the FDCPA in this regard.[12] Lawent's argument that he is not liable because of the bona fide error defense will be addressed below.

§ 1692e generally prohibits "false, deceptive or misleading" collection activities. More specifically, as it applies to this situation, the provision prohibits the "false representation" of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "§ 1692e(2)(A) creates a strict-liability rule," and "[d]ebt collectors may not make false claims, period." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Ignorance is no excuse and the provision applies "even when a false representation was unintentional." *Turner v. J.V.D.B. & Assoc.*, 330 F.3d 991, 995 (7th Cir. 2003) (quoting *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000)); *see also Randolph*, 368 F.3d at 728 (stating that a "debt collector's false statement is presumptively wrongful" under § 1692e(2)(A) even if the speaker is ignorant of the truth).

It is undisputed that the two complaints filed by Lawent in this case claimed an amount that was more than what Gonzalez owed for the Buick, or even what he owed for the Buick and the Chevrolet together. (*See* Def.'s LR Resp. ¶ 13; Cohen Dep. at 27-28.) It is also undisputed that the amount claimed on the complaints represented the sum of the amounts allegedly due on both the Buick and the Chevrolet accounts, even though there was no mention of the Chevrolet in either complaint. (*See* Def.'s LR Resp. ¶¶ 12, 21; Cohen Dep. at 25; First Compl.; Second Compl.) Thus, the claim for $2,726.20 was a "false representation" of "the character, amount, or legal status" of the debt, in violation of 15 U.S.C. § 1692e(2)(A). As the Seventh Circuit has made clear, that is true even though Lawent may have been unaware that the amount claimed in the complaints was

---

[12] In fact, at oral argument Lawent essentially conceded that his actions violated § 1692e(2)(A).

incorrect. *See, e.g., Randolph*, 368 F.3d at 728. *See also Alexander v. Unlimited Progress Corp.*, No. 02 C 2063, 2004 WL 2384645 at *3 (N.D. Ill. Oct. 20, 2004) (Schenkier, M.J.); *Blum v. Lawent*, No. 02 C 5596, 2004 WL 2191612 at *3 (N.D. Ill. Sept. 27, 2004) (Pallmeyer, J.). Consequently, the court finds, as a matter of law, that the complaints filed by Lawent in this case made false statements in violation of § 1692e(2)(A).

Gonzalez also argues, in support of his motion for summary judgment, that Lawent violated § 1692f as well, by verifying false complaints "without first conducting even a cursory investigation into the validity of the debt, and after he was presented evidence prior to verifying the complaint that the debt in question has been paid in full." (Pl.'s Mem. at 8; *see also* Pl.'s Mem. at 2.)[13] Because, as discussed below, the court finds that there is a question of fact regarding Lawent's bona fide error defense precluding summary judgment for Gonzalez, it is unnecessary to consider whether Gonzalez has proven additional violations of the FDCPA, or whether additional violations, if proven, should be considered in assessing damages.

---

[13] In addition, Gonzalez argued that Lawent also violated § 1692e(3) by "representing that communications (the complaints) were from an attorney when they were really from a collection agency," and § 1692f(1) "by attempting to collect the unearned finance charge portion of a paid debt." (Pl.'s Mot. ¶ 8; Pl.'s Mem. at 3.) However, Gonzalez never raised these claimed violations in his amended complaint. As such, they will not be considered here. *See Gonzalez*, 2004 WL 2036409 at *2 (reminding Gonzalez's counsel that the court would not grant summary judgment on claims not fairly raised in the complaint).

## II. Whether Lawent May Be Entitled to the Bona Fide Error Defense of § 1692k(c).

The FDCPA affords debt collectors an affirmative defense, called the bona fide error defense.[14] Under this defense, "[a] debt collector may not be held liable [under the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

Thus, to qualify for the bona fide error defense under § 1692k(c), Lawent must prove by a preponderance of the evidence that: (1) the FDCPA violation was unintentional, resulting from a bona fide error; and (2) that error occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. *Turner*, 330 F.3d at 997; *Peeples v. Hasenmiller*, No. 00 C 7028, 2004 WL 2211627 at *4 (N.D. Ill. Sept. 30, 2004) (Gottschall, J.). *See also Kort v. Diversified Collection Serv., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997)). The court will consider those elements in turn.

### A. Whether Lawent's FDCPA violation was unintentional, resulting from a bona fide error.

Lawent argues that he did not intentionally sign either of the complaints in an attempt to collect a debt that was not owed, but, rather, was unaware of the fact that the Buick had been paid for and believed that the amount claimed was actually owed. (Def.'s Resp. at 4-5.) Lawent also maintains that he acted in good faith throughout the transaction. (*Id.* at 5.) According to Lawent,

---

[14] Attorneys who regularly engage in debt collection activity, including litigation, are considered "debt collectors" under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *see also Donley v. Nordic Properties, Inc.*, No. 99 C 4677, 2003 WL 22282523 at *3 (N.D. Ill. Sept. 30, 2003) (Andersen, J.).

he has a practice of relying on the representations of his client, J.V.D.B., who in turn relied on the representations of its long-term client, Brim, to provide him with accurate information that the debt sought to be collected was current and collectible. (*Id.* at 2.) Lawent states that as soon as he discovered that the debt may have been paid, based on the facsimile he received from Gonzalez's attorney, he requested further investigation of the claim by J.V.D.B. and then immediately dismissed the suit upon J.V.D.B.'s instruction. (*Id.* at 4.) He also states that Gonzalez never responded to the debt validation letter sent by J.V.D.B. before the case was referred to him. (*Id.* at 5.) Based on those facts, Lawent argues that his violation of the FDCPA was clearly unintentional and the result of a bona fide error.

A bona fide error is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538 (citing Black's Law Dictionary 168 (7th ed. 1999) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere; genuine")). Evidence that a debt collector was unaware that the amount he sought to collect was inaccurate supports a finding that his violation was unintentional. *See Turner*, 330 F.3d at 996 (stating that "proof that [the defendant] was unaware of the bankruptcy would be a logical first step" in establishing the bona fide error defense); *Peeples*, 2004 WL 2211627 at *4 (holding that defendant's FDCPA violation was unintentional where the defendant "had nothing to do with [its client's] valuation of plaintiffs' merchandise"). Notably, a debt collector need only show that his FDCPA *violation* was unintentional, not that his *actions* were unintentional. *See Kort*, 394 F.3d at 537 (citations omitted). Here, the court finds that Lawent has presented sufficient evidence at this stage to support his contention that his error was bona fide and his violation of the FDCPA unintentional. Specifically, Lawent's testimony that he "did not know that the amount the collection

agency asked him to collect for Brim Motor Mart was inaccurate" (Lawent Aff. ¶ 13) is supported by evidence that he has an agreement with J.V.D.B. on which he relies, that only current and collectible debts will be referred to him. *See* Lawent Aff. ¶¶ 4, 5, 10, 11, 13, 16; Vanko Aff. ¶¶ 4, 8; Def.'s LR Resp. ¶¶ 29, 32. Although Gonzalez provided some evidence to support a finding that Lawent's error was not in good faith (*e.g.*, evidence that Lawent filed the second complaint *after* Gonzalez showed him a copy of the check stub in court) (Gonzalez Aff. ¶ 18), Lawent has sufficiently disputed that fact (at least for purposes of this summary judgment motion) by providing evidence that Gonzalez never showed him such documentation. *See* Lawent Aff. ¶¶ 18-20; *see also id.* ¶ 24 (testifying that the second complaint was signed based on his review of documents in preparing the first complaint). Accordingly, Lawent has provided enough evidence to go forward on this first element of the bona fide error defense.

**B.      Whether Lawent maintained procedures reasonably adapted to avoid the error.**

Lawent argues that he relied on his oral agreement with J.V.D.B., who relies on its agreements with its clients, to refer only current and collectible debts to Lawent for legal action. (Def.'s Resp. at 2, 4.) In support of the position that his reliance is a procedure reasonably adapted to avoid errors, Lawent argues that he has handled legal work for J.V.D.B. since August 2000, including several of Brim's collection cases, and "[n]one of Brim's referrals have been contested or found to be inaccurate" (except this one, presumably). (Def.'s Resp. at 3; Lawent Aff. ¶ 11.) Lawent also states that he handles "several hundred cases each month" for J.V.D.B. and has had only "minimal problems" with those. (Lawent Aff. ¶ 23; Def.'s Resp. at 5.) In addition, Lawent relies on the fact that J.V.D.B. sent a debt validation letter to Gonzalez before referring his case to Lawent

and Gonzalez never responded to the letter (Def.'s Resp. at 5; Lawent Aff. ¶¶ 6-8), and that he dismissed the suit against Gonzalez as soon as he discovered that the debt may have been paid. (Def.'s Resp. at 4; Lawent Aff. ¶¶ 21, 22.)

Gonzalez argues that Lawent's bona fide error defense fails as a matter of law because Lawent offers no evidence of any "procedures," *e.g.*, how Cohen performs calculations of the amounts owed under the retail installment contracts, or how J.V.D.B. assures that only current and collectible debts are referred. (Pl.'s Reply at 3; Pl.'s Mem. at 9-10.) In support of his contention, Gonzalez points to Vanko's deposition testimony that there are no actual checking procedures in place and that Vanko just "take[s] . . . the client's word" as to balances that are owed. (Pl.'s Mem. at 11-12; Pl.'s Reply at 8; Vanko Dep. at 28.) Gonzalez further argues that the lack of a written contract or other documentation of organized procedures for Lawent to follow before filing a collection complaint indicates that Lawent's procedures are inadequate. (Pl.'s Reply at 4-6.) Gonzalez maintains that if Lawent had "reviewed the account history, showing a large payment substantially in excess of the amount owed on the date the payment was received followed by no further payments," an obvious question would have been presented to him as to the fact that there was an error. (Pl.'s Reply at 5.)

The Seventh Circuit has made clear that the bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539 (citation omitted). Thus, debt collectors are not required to "independently verify the validity of the debt," or "independently research each account." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). *See also Peeples*, 2004 WL 2211627 at *4 (holding that defendants' procedures were sufficient to avail themselves of the bona fide error defense even

though they took at face value their client's valuation of the merchandise sought to be recovered, and stating that "debt collectors do not have an independent duty to double-check whether their creditor-clients' claimed debt is legally viable"). Although Gonzalez is correct that Lawent certainly could have done more than what he did, in the court's view, Lawent has put forward enough evidence on this issue to create a genuine issue of material fact as to whether he maintained reasonable procedures designed to avoid errors. To begin with, Lawent has presented evidence to support the fact that he relies on an oral agreement with J.V.D.B., which provides that J.V.D.B. will provide complete, accurate information on cases and refer only current and collectible debts to him. *See* Lawent Aff. ¶¶ 4, 5, 10, 13, 16; Def.'s LR Resp. ¶¶ 29, 32; Vanko Aff. ¶¶ 4, 8. The presence of such an agreement, even an oral agreement, has been considered an important factor on the issue of whether adequate procedures were in place to avoid errors. *See, e.g.*, *Turner*, 330 F.3d at 996 (stating that reasonable preventive measures to avoid mistakes could be shown, for example, by evidence of "an agreement with [defendant's] creditor-clients that debts are current and the demand letter was sent soon after the assignment"); *Hyman*, 362 F.3d at 967 (holding that debt collector's reliance on its creditor not to refer accounts that are in bankruptcy, which was based on an "understanding" with the creditor, was a procedure reasonably adapted to avoid erroneous collection efforts).

In support of the reasonableness and effectiveness of his agreement with J.V.D.B., Lawent testified that he has never had any problem with any of the other debt collection matters involving Brim, and has had only "minimal" problems with the "thousands of [] cases" he has handled for J.V.D.B. (Lawent Aff. ¶¶ 11, 13, 23.) Although Lawent's testimony that he has had only "minimal" problems is lacking in specificity and support, if he can establish at trial that the accounts referred

to him did in fact contain a low percentage of unauthorized or incorrect charges, that is evidence to support a finding that his oral agreement with J.V.D.B. was a reasonable and effective procedure designed to avoid errors. *See Hyman*, 362 F.3d at 967-968 (evidence that only .01% of the accounts referred to defendant for collection were later found to have been in bankruptcy supported the reasonableness and effectiveness of defendant's understanding with its creditor). In addition, evidence that Lawent was aware of, and relied on, J.V.D.B.'s sending an uncontested debt validation letter to Gonzalez, if established at trial, could support the reasonableness and effectiveness of Lawent's agreement with J.V.D.B. (*See* Lawent Aff. ¶¶ 6-8.)

Finally, Lawent has presented evidence supporting his contention that there were procedures in place to ensure the immediate cessation of collection efforts with respect to accounts containing errors. Specifically, Lawent testified that as soon as he received the facsimile from Gonzalez's attorney indicating that the debt might not be collectable, he confirmed the information with J.V.D.B. and, on its instruction, moved to dismiss the case against Gonzalez with prejudice. (Def.'s LR Resp. ¶ 28; Lawent Aff. ¶¶ 21, 22.) The Seventh Circuit has found that type of practice to support a conclusion that reasonable procedures were in place to prevent errors. *See, e.g., Hyman*, 362 F.3d at 967, 968 (holding that the defendant's procedures, which included "immediate cessation of collection efforts once [the defendant] learns of a bankruptcy filing," were adequate, and noting that any potential harm to the debtors would be "slight").

Based on the facts and authorities discussed above, it cannot be said that a reasonable factfinder could not find that the procedures employed by Lawent were sufficient. Of course, at trial Lawent will have the burden to prove that the errors in the complaints he filed occurred notwithstanding the maintenance of procedures reasonably adapted to avoid those errors. His failure

to do so would preclude him from prevailing on the bona fide error defense. *See, e.g.*, *Turner*, 318 F. Supp. 2d 681, 686, 687 (N.D. Ill. 2004) (finding that defendant's procedure, which entailed relying on its creditors to provide current and accurate information on a debtor's account, was insufficient where such procedure was "not based on any fact or any understanding and/or agreement with its creditor-clients," and defendant did not demonstrate that there was an infrequent reference of erroneous accounts to defendant or that its clients would immediately contact it if an error was found); *Blum*, 2004 WL 2191612 at *4 (finding that defendant's procedure, which consisted solely of personally reviewing documents before filing them, was inadequate); *Alexander*, 2004 WL 2384645 at *5 (bona fide error defense not established where defendant offered no evidence to show the effectiveness of its notice to creditors that it did not handle bankruptcy accounts for collection, such as whether the notice ever reached creditors or whether creditors in fact did not refer such files to defendant). However, at this stage Lawent has provided enough evidence to raise a genuine issue of fact as to whether he can satisfy the bona fide error defense; thus, Gonzalez's summary judgment motion is denied.

## Conclusion

For the foregoing reasons, Gonzalez's Motion for Summary Judgment is denied. Status in this case is hereby set for May 9, 2005 at 9:00 a.m.

IT IS SO ORDERED.

_Geraldine Soat Brown_
Geraldine Soat Brown
United States Magistrate Judge

April 28, 2005